UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
CAMERON GARDIN                          :       Civil Action No.: 1:18-cv-02199
                                        :
                                        :       **FIRST AMENDED COMPLAINT**
                    Plaintiff,          :       to remedy discrimination on basis
            v.                          :       of disability stemming from HIV
                                        :
DELTA AIR LINES, INC.,                  :
                                        :
                                        :
                                        :
                    Defendant.          :       **Jury Trial Demanded**
-----------------------------------------------------X

Plaintiff, Cameron Gardin, by and through his undersigned attorneys, complaining of

Defendant, Delta Air Lines, Inc., brings the instant action requesting judgment in his favor, and

against Defendant, and in support thereof, allege, upon information and belief, as follows:

## NATURE OF ACTION

1.   Plaintiff, Cameron Gardin, a former employee of Delta Air Lines brings this lawsuit

against his previous employer, Delta Air Lines (Delta), to remedy discrimination based upon his

HIV status on the part of Delta. Delta subjected Plaintiff to disability discrimination and a hostile

and discriminatory work environment in violation of federal law.

## PARTIES

2.   Plaintiff, Cameron Gardin, is an adult individual, residing at 110 29th Ave Drive, NW,

Apt. 114, Hickory, NC 28601.  At all times material hereto, Plaintiff was employed by

Defendant, Delta Air Lines, as a Flight Attendant.  In his capacity of an employee of Delta,

Plaintiff was a Flight Attendant based in New York and has worked as a Flight Attendant for

Delta for over 9 years.  Plaintiff is HIV positive.  Due to a harassing and hostile work

environment, Plaintiff had no other choice than to resign from his job on December 8, 2017.

3.  Delta Air Lines, Inc. is a corporation duly organized and existing under the laws of the State of Delaware, with headquarters in Atlanta, Georgia.  Delta employs more than 80,000 employees worldwide and, as of October, 2016, flew to 54 countries on 6 continents.  In 2013, Delta was the world's largest airline in terms of passengers carried, at 120.6 million passengers. Delta has numerous key hubs and markets including but not limited to New York, at JFK International Airport and LaGuardia Airport.

## JURISDICTION AND VENUE

4.  The above paragraphs are incorporated herein by reference.

5.  Jurisdiction in this Honorable Court is based on federal question 28 U.S.C. §1331; supplemental jurisdiction over state law claims is granted by 28 U.S.C. §1367.

6.  Venue is proper in the Eastern District of New York, as the facts and transactions involved in the discrimination complained of herein occurred in large part in this judicial district. at JFK International Airport, in Bronx County, New York.

## STATEMENT OF FACTS

7.  The above paragraphs are incorporated herein by reference.

8.  Delta, in a number of unlawful, intimidating and discriminatory acts, created a discriminatory and hostile work environment for Plaintiff.

9.  Plaintiff was employed by Delta from March 4, 2008 until December 8, 2017, when he was forced to resign. Resignation was Plaintiff's only choice due to the hostile environment that Delta created by intimidating Plaintiff and by Delta's unfair and discriminatory actions toward Plaintiff.

10. Plaintiff was diagnosed with HIV in or around October 2008, not long after he began working for Delta. Due to his diagnosis, Plaintiff was granted approved unpaid work absences under the Family and Medical Leave Act (FMLA) in or around early 2009.

11. Plaintiff worked full time until about November 2012, when he was forced to take an extended leave of absence due to HIV-related complications.

12. Plaintiff was so seriously ill that he was mostly wheelchair bound and out of work for over two years until March 2015. During this time, Plaintiff was receiving Supplemental Security Income (SSI). Delta was aware of Plaintiff's SSI benefits, in fact Delta required that Plaintiff receive SSI as a condition of being able to return to work

13. Delta began making Plaintiff feel uncomfortable immediately upon his return to work in or around March 2015. On his first day back at work, Plaintiff needed to be escorted to Delta's main office to get a new identification card. The employee who took Plaintiff to get his ID card noticed that he was limping, a complication from his HIV and stated, "Are you sure you are ready to come back to work?"

14. Upon his return to work, Plaintiff had difficulty getting FMLA again as he had to accumulate the requisite number of hours in order to become eligible for FMLA. In early 2016, plaintiff was granted FMLA again.

15. However, in the time period between Plaintiff's return to work and his re-certification of FMLA, he had a number of work absences due to his illness.

16. Upon information and belief, some of these sick absences were not properly processed by Delta. Thus, while Plaintiff had a legitimate illness that kept him from working, Delta charged Plaintiff with unexcused absences.

17. In or around August 2013, Plaintiff filed a formal complaint because fourteen (14) of his legitimate absences were never approved as all of the transmitted FMLA requests went un-processed, unread unbeknownst to him, while the individual in charge was on vacation. As a result, Plaintiff was incorrectly accused of unexcused absences.

18. In spite of Plaintiff's explanation, Delta placed Plaintiff on a 36-month probation, including a final written notice to Plaintiff, all resulting from Delta's inability to properly process the paperwork for these sick absences.

19. At all times relevant hereto, each of Plaintiff's coworkers and managers at Delta involved in the instant Complaint were aware of Plaintiff's illness, disability and/or perceived disability, to wit: that Plaintiff was HIV positive.

20. Plaintiff was continuously harassed by his managers after his FMLA went into effect for a second time, when Plaintiff had scheduled FMLA approved absences.

21. In or around each approved FMLA absence, Plaintiff found himself called into the management office for some pretextual reason. Plaintiff was continually intimidated into answering questions about his private and personal medical condition that were posed by numerous managers that neither managed or supervised Plaintiff.  The foregoing pretextual investigations were intended to harass and humiliate Plaintiff, and to discriminate against Plaintiff due to his disability or perceived disability and/or in retaliation for his FMLA requests due to same.

22. These Delta managers would repetitively remind him that calling out would get him terminated as he was on probation. David Gilmartin, Plaintiff's base director, told him he needed to make a change or he wasn't going to have a job due to his absences.

23. On one marked occasion, Plaintiff was called into the management office and met by his manager John Marsh, and another manager by the name of Shirley, with whom Plaintiff was not very familiar. Instead of speaking to Plaintiff directly about why he had been called into the office, Mr. Marsh ignored Plaintiff and told Shirley, right in front of Plaintiff, that Plaintiff was a problem and instructed Shirley to explain to Plaintiff the stress that he was causing their work environment. This encounter was extremely embarrassing, hurtful and awkward for Plaintiff.

24. On another particularly disturbing occasion, a duty manager called Plaintiff into the office and said due to his absences he was a huge burden on the system. Plaintiff got very emotional and broke down in tears about this because he was so frustrated with the situation and how Delta was treating him. Upon leaving the meeting, the Manager told Plaintiff "not to forget to smile" when he left the office and told him not to tell anyone what had transpired.

25. Plaintiff's manager, Mr. Marsh would continuously call Plaintiff on days when he was not even scheduled to work and would tell him if he had any more absences there was nothing he could do to help him. This constant harassment became near impossible for Plaintiff to handle.

26. One of Plaintiff's goals while at Delta was to become part of the Purser Program, a managerial program for Delta's international flight attendants. Plaintiff shared this aspiration with Mr. Marsh several times. However, each time Plaintiff mentioned his desire to become a Purser, Mr. Marsh shut him down immediately and told Plaintiff that he would never become one. This was extremely discouraging to Plaintiff. Upon information and belief, these adverse actions were due to Plaintiff's disability and/or perceived disability and/or his taking of FMLA time for same.

27. The outrageous questioning, discriminatory practices and hostile environment at Delta scared Plaintiff and prevented Plaintiff from continuing his employment.

28. During this time, Plaintiff had FMLA and all of his absences were FMLA approved.

29. Plaintiff was terrified to call in sick even though he had an FMLA approved condition, for fear that he would be terminated.

30. In or around June 2017, seven (7) months prior to Plaintiff's resignation, Plaintiff began experiencing issues with an HIV-related condition called HIV myelopathy. The myelopathy would cause uncontrollable right-sided muscle spasms that would make him fall to the floor if he was standing. Delta was aware of Plaintiff's myelopathy.

31. In one instance, Plaintiff suffered from a spasm at the JFK International airport and was put in a wheelchair. This incident was not only very humiliating to Plaintiff but also caused him to be very emotional as it reminded him of the time he was wheelchair bound for almost two-years. Around the time of day Plaintiff suffered this episode, he was scheduled to have yet another meeting with one of the Delta managers who was located in another part of the airport. The manager not being concerned about Plaintiff's health, became very upset with Plaintiff as he was unable to get to the area of the airport in time for the meeting.

32. In or around July and August 2017, almost every time Plaintiff came to work, Delta tested Plaintiff for drugs and alcohol.

33. Upon information and belief, Plaintiff was unfairly targeted and discriminated against by having to undergo this non-random drug and alcohol testing.  Plaintiff flew six (6) times in a one- month period in or around July and August 2017. Of those six (6) times, Delta "randomly" tested Plaintiff four (4) times by both breathalyzer and urinalysis. Understandably, this caused Plaintiff substantial humiliation. Furthermore, it is difficult to imagine that these drug/alcohol tests were random and not targeted.

34. Upon information and belief, Delta was aware of Plaintiff's condition that caused Plaintiff to have uncontrollable spasms.

35. Beyond the egregious harassment directed toward Plaintiff pertaining to a private and personal medical diagnosis by Delta managers, these same Delta managers would routinely find an issue with Plaintiff's appearance.

36. A number of times, multiple managers would harass Plaintiff because Plaintiff was wearing a union pin, even though the pin was in dress code compliance pursuant to the Delta Employee Handbook.  Upon information and belief, the harassment concerning Plaintiff's uniform was nothing more than pretext unlawful disability and/or FMLA discrimination.

37. In another incident, Plaintiff was called to the front desk to be disciplined about his hairstyle. Plaintiff was told that his hairstyle was distracting to the customers. However, it was the exact same hairstyle Plaintiff had worn for the past two years. Plaintiff asked them to point to any Delta regulation, showing that his haircut was out of compliance.  They could not do so.

38. During September 2017, Plaintiff missed almost the whole month of work due to illness and doctor appointments. Though Plaintiff still had FMLA time left, Delta encouraged Plaintiff to go on short term disability, which began in or around late October 2017. However, even with the short-term disability, he had a hard time getting absences approved.

39. Plaintiff spoke to his manager, John Marsh and requested but never received a reasonable accommodation from Delta for his chronic condition. At no time did Marsh refer Plaintiff to an accommodation specialist in Delta's Equal Opportunity ("EO") Division.

   a.  Although requested, Delta never provided a refrigerator for Plaintiff to store his medications that were vital to his health.

b.  Plaintiff requested a different position with less travel. Plaintiff was told by management that a lateral transfer would not be possible, as he was on final written notice.  Upon information and belief, the final written notice was based solely upon the false charges concerning absences and was also a pretext for discrimination.

c.  Delta failed to engage in a constructive, interactive process concerning Plaintiff's disability.

40. Plaintiff was advised that if he went out of work and had a return to work date without any restrictions stemming from his illness, he could transfer to a different position. At no time did anyone from Delta make Plaintiff aware of or refer him to an accommodation specialist in Delta's Equal Opportunity Division.

41. This news was devastating to Plaintiff. He felt hopeless. He was persistently being harassed due to his illness and Delta refused to make any reasonable accommodations for him. Plaintiff felt that his only choice was to resign. Plaintiff resigned on December 8, 2017.

42. Upon information and belief, the discrimination against Plaintiff as an HIV positive individual is part of a pattern and practice by Delta of discriminating against employees with HIV/AIDS related disabilities.  Delta has maintained a custom, policy or practice of routinely and regularly discriminating against, terminating, harassing and failing to provide reasonable accommodation to employees suffering from HIV/AIDS.

43. Plaintiff has exhausted said remedies after filing with the EEOC and other state agencies and has obtained a right to sue.

## STATEMENT OF CLAIMS

### COUNT I.
### VIOLATION OF TITLE VII

44. The above paragraphs are hereby incorporated herein by reference.

45. By committing the foregoing acts of discrimination against Plaintiff, Defendant have violated Title VII.

46. Said violations were done with malice and/or reckless indifference, and warrant the imposition of punitive damages.

47. As a direct and proximate result of Defendant violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

48. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant discriminatory acts unless and until this Court grants the relief requested herein.

### COUNT II.
### INTERFENCE WITH FMLA RIGHTS

49. The above paragraphs are incorporated herein by reference.

50. Delta was Plaintiff's "employer" as defined by the FMLA.

51.  Plaintiff was an eligible employee under the FMLA

52. Defendant interfered with Plaintiff's rights protected under the Family Medical Leave Act, 29 U.S.C. § 2601, et seq.

### COUNT III.
### RETALIATION IN VIOLATION OF FMLA

53. The above paragraphs are incorporated herein by reference.

54. Delta unlawfully retaliated against Plaintiff in violation of the FMLA.

55. Delta conduct constitutes unlawful retaliation against Plaintiff in violation of Delta rights under the FMLA, 29 U.S.C. §2615(a).

56. Delta acted purposely and with malice with the intent to injure Plaintiff.

57. As a direct and proximate result of Delta's actions and unlawful retaliation against Plaintiff, Plaintiff has suffered mental and emotional damages, Plaintiff's employment was constructively terminated and Plaintiff has incurred, and will continue to incur, substantial economic damages.

<u>**COUNT IV.**</u>
<u>**REFUSAL TO REASONABLY ACCOMMODATE - ADA**</u>

58. The above paragraphs are incorporated herein by reference.

59. Plaintiff is an individual with a disability as the term is defined in Section 3(2) of the ADA, 42 U.S.C. Section 12102(2). Plaintiff has HIV, which substantially limits one or more of his major life activities, has a record of such impairment and is regarded by Delta as having impairment.

60. Plaintiff is a qualified individual with a disability within the meaning of Section 101 (8) of the ADA, 42 U.S.C. Section 12111(8), in that Plaintiff is an individual with a disability, who with reasonable accommodation of access refrigeration for his medication and other reasonable accommodations, such as job restructuring, can perform the essential functions of his position with Delta.

61. Plaintiff requested but was never provided a refrigerator store his medications that were vital to his health.

62. Plaintiff also requested a different position with less travel as it would be easier on his health. Plaintiff was told by management that a lateral transfer would not be possible, as he was on final written notice.

63. At no time did anyone from Delta make Plaintiff aware of or refer him to an accommodation specialist in Delta's Equal Opportunity Division.

64. Delta failed to make reasonable accommodations to Plaintiff.

65. Delta's failure to make reasonable accommodations to Plaintiff's disability constitutes discrimination against Plaintiff with respect to the terms, conditions or privileges of his employment. Delta's failure to act is in violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. Section 12112(b)(5)(A).

66. As a direct and immediate result of Delta's Discrimination on the basis of disability, Plaintiff has suffered lost wages, lost benefits and lost employment opportunities and is entitled to damages.

## COUNT V.
## ADA RETALIATION

67.  The foregoing paragraphs are incorporated herein by reference.

68. In addition and/or in the alternative, the foregoing adverse employment actions taken against Plaintiff constituted retaliation for Plaintiff's lawful requests and exercise of rights under the ADA.

## COUNT VI.

## CONSTRUCTIVE DISCHARGE ON THE BASIS OF DISABILITY

69. The above paragraphs are incorporated herein by reference.

70. Plaintiff is a qualified individual with a disability within the meaning of section 101(8) of the ADA, 42 U.S.C. Section 12111(8), in that he is an individual with a disability, who, with reasonable accommodation, can perform the essential functions of his position at Delta.

71. Reasonable accommodation within the meaning of 42 U.S.C. Section 12111(9)(b), includes job restructuring, part-time or modified work schedules, reassignment to a vacant

position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers of interpreters, and other similar accommodations for individuals with disabilities.

72. Delta's constructive discharge of Plaintiff in violation of Section 102 of the ADA, 42 U.S.C. Section 12112, which prohibits discrimination on the basis of disability, in that Delta constructively discharged Plaintiff, solely on the basis of his disability, despite his ability to perform the essential functions of his position at Delta.

73. The dispute surrounding Plaintiff's FMLA approved absences due to his illness were a pretext for discrimination based on Plaintiff's disability.

74. As a direct consequence of Delta's constructive discharge of Plaintiff, Delta discriminated against Plaintiff with respect to the terms, conditions or privileges of employment.

75. Delta's discriminatory conduct was to Plaintiff was taken with malice and with reckless disregard to Plaintiff's federally protected rights.

76. As a direct and proximate result of Delta's discrimination Plaintiff has been deprived of economic benefits, including but not limited to, lost wages, lost fringe benefits, loss of job opportunities and pain and suffering, for which he is entitled monetary damages.

77. Delta's constructive discharge of Plaintiff has caused, continues to cause and will cause Plaintiff extensive damages for future pecuniary losses including wages and benefits, mental torment, future pain and suffering, loss of enjoyment of life and other non-monetary losses.

<u>**COUNT VII.**</u>
<u>**HOSTILE WORK ENVIRONMENT**</u>

78. The above paragraphs are incorporated herein by reference.

79. The foregoing actions of Defendant created a hostile work environment that was severe and pervasive and that altered the terms and conditions of Plaintiff's employment.

## COUNT VIII.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

80. The actions of the Defendant, were designed to emotionally harm Plaintiff by causing him to subsist in an overwhelming, intimidating and hostile work environment.

81. The conduct Delta was intentional, oppressive, malicious and/or in wanton disregard of the rights and feelings of Plaintiff and constitutes despicable conduct, and by reason thereof Plaintiff demands exemplary or punitive damages against Delta in an amount appropriate to punish Delta and to deter Delta and others from such conduct in the future.

## COUNT IX.
### VIOLATION OF THE NEW YORK HUMAN RIGHTS LAW (NYHRL)

82. The above paragraphs are incorporated herein by reference.

83. The above acts and practices of Delta constitute unlawful discriminatory employment practices under the New York Human rights Law.

84. As a result of Delta's discriminatory acts, Plaintiff has suffered and shall continue to suffer monetary damages and damages for mental suffering and humiliation unless and until the Court grants relief.

## COUNT X.
### VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

85. The above paragraphs are incorporated herein by reference.

86. The above acts and practices of Delta constitute unlawful discriminatory employment practices under the New York City Human rights Law.

87. As a result of Delta's discriminatory acts, Plaintiff has suffered and shall continue to suffer monetary damages and damages for mental suffering and humiliation unless and until the Court grants relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Delta, and Order the following relief:

a.  A declaratory judgment declaring that Delta has illegally discriminated against Plaintiff;

b.  Declaring the acts and practices complained of herein are in violation of the ADA 42 U.S.C. Section 12101 et. seq., FMLA and NY State Human Rights Law;

c.  Enjoining and permanently restraining the aforesaid violations;

d.  Require Delta to pay all earnings Plaintiff would have received, but for the discriminatory practices, including but not limited to, front and back pay and otherwise lost and future benefits;

e.  Payment of compensatory and punitive damages, to all Plaintiffs in an amount to be determined at trial; and,

f.  An award of Plaintiff's attorneys' fees and costs of suit as provided by the FMLA and ADA, and NY State Human Rights Law.

g.  Such other relief as this honorable Court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial as to all issues so triable herein.

[remainder of page left intentionally blank]

Respectfully submitted,

**MILDENBERG LAW FIRM**
/s/ Brian R. Mildenberg, Esq.
Brian R. Mildenberg, Esq.
PA Attorney ID No. 84861
1735 Market St.,
Suite 3750
Philadelphia, PA 19103
215-545-4870
Fax: 215-545-4871
brian@mildenberglaw.com
www.MildenbergLaw.com
Attorney for Plaintiffs
(*pro hac vice*)

**WEISBERG LAW**
/s/ Matthew B. Weisberg
Matthew B. Weisberg, Esq.
PA Attorney ID No. 85570
7 South Morton Ave
Morton, PA 19070
610-690-0801
Fax: 610-690-0880
Attorney for Plaintiffs
(*pro hac vice*)

**PAWAR LAW GROUP P.C.**

**/s/ Vik Pawar**
Vik Pawar, Esquire
20 Vesey Street, Suite 1210
New York, New York 10007
(212)-571-0805 (phone)
(212)-571-0938 (fax)
(Local Counsel)

Dated: August 9, 2018

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CAMERON GARDIN | : | |
| | : | |
| Plaintiff, | : | NO. 1:18-cv-02199 |
| | : | |
| v. | : | |
| | : | |
| DELTA AIRLINES, INC. | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendant. | : | |

### CERTIFICATE OF SERVICE

I, Matthew B. Weisberg, Esquire, hereby certify that on this 9th day of August, 2018, a

true and correct copy of the foregoing Plaintiff's First Amended Complaint was served via ECF,

upon the following parties:

Ira G. Rosenstein, Esquire
Michael F. Fleming, Esq.
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, NY 10178

**WEISBERG LAW**

/s/ Matthew B. Weisberg
Matthew B. Weisberg, Esquire
PA Attorney ID #: 85570
7 S. Morton Avenue
Morton, PA 19070
(610) 690-0801
(610) 690-0880 – Fax
mweisberg@weisberglawoffices.com
*Attorney for Plaintiff (Pro Hac Vice)*